J-S20040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM A.L. PAINTER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIFFANY M. LEAKWAY F/K/A TIFFANY | : | |
| M. LEAKWAY-PAINTER | : | |
| | : | No. 246 MDA 2021 |
| Appellant | : | |

Appeal from the Order Entered January 22, 2021
In the Court of Common Pleas of York County Civil Division at No(s):
2014-FC-000582-03

BEFORE:  NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: OCTOBER 8, 2021**

Tiffany M. Leakway f/k/a Tiffany M. Leakway-Painter ("Mother") appeals from the Order granting the Motion filed by William A.L. Painter ("Father")[1] to relinquish jurisdiction in this custody matter to the Commonwealth of Virginia, where Father and the parties' female child, M.P. ("Child") (born in April 2007), have lived since 2017, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[2]  We affirm.

---

[1] We note that the trial court used the parties' full names in the caption, and no party has applied for the use of initials on appeal.  **See** Pa.R.A.P. 904(b) (stating that "[i]n an appeal of a custody action where the trial court has used the full name of the parties in the caption, upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child.").

[2] **See** 23 Pa.C.S.A. §§ 5401-5482.

Mother and Father are the natural parents of Child. The parties separated in 2012. Father initially filed a Custody Complaint, in Pennsylvania, in March 2014, when the parties were sharing custody of Child. Following additional proceedings not relevant to the instant appeal, Father sent Mother a Notice of his proposed relocation with Child to Virginia. Mother filed a Counter-Affidavit opposing both the relocation and modification of custody. The trial court entered a Final Custody Order on December 2, 2016, awarding Father sole legal custody and primary physical custody, and awarding Mother supervised custody. The trial court also granted Father permission to relocate with Child following the 2016-2017 academic year.[3] Further, the Final Custody Order permitted Mother to exercise periods of unsupervised custody, on a fixed schedule, so long as she complied with various requirements (*i.e.*, completion of drug and alcohol counseling, completion of a threat and harm evaluation and compliance with recommendations).

On December 9, 2020, Mother filed a Petition for Contempt and Modification, arguing that Father had restricted her access to Child, and seeking shared legal and physical custody. Father did not directly respond to Mother's Petition, but filed a Motion for Transfer of Venue on December 31, 2020.

---

[3] Mother continues to reside in Pennsylvania.

Following a conciliation conference on January 5, 2021, the trial court filed an Interim Order for Custody, pending trial.[4] The Interim Order directed the parties to confer and try to agree on a counselor for family counseling.

The trial court conducted a hearing on the Motion to Transfer on January 21, 2021. The testimony at the hearing established that Father and Child moved to Virginia in 2017. N.T., 1/21/21, at 4, 5. Father testified that Child attends school in Virginia, is involved in sports and volunteer work, and has friends there. *Id.* at 6. According to Father, the parties had not been to court in Pennsylvania since 2016. *Id.* at 9; *see also id.* at 35 (wherein Mother acknowledged that the parties had not been in court for this matter between 2017 and 2019). Additionally, Mother agreed that she could participate in another jurisdiction's proceedings via Zoom. *Id.* at 37. At the close of the hearing, the trial court stated as follows:

> The [trial c]ourt has before it Father's [M]otion to [T]ransfer jurisdiction and/or venue. More precisely, Father wants the [trial c]ourt to relinquish jurisdiction, presumably, for Virginia to resume jurisdiction in this matter.
>
> It is the Order of [c]ourt in this matter that this [c]ourt does relinquish jurisdiction of this matter to Virginia and/or any other state that may qualify as a home state under the UCCJEA. The [trial court] does this under Section 5422, which is titled Exclusive, Continuing Jurisdiction.
>
> This [c]ourt finds as a matter of law and fact that neither the Child, nor the parent, nor a person acting as a parent, have a significant connection with [Pennsylvania]. And, further, the [c]ourt finds that substantial evidence is no longer available in

_____

[4] The Interim Order was not entered on the docket until February 16, 2021.

[Pennsylvania] concerning the Child's care, protection, training, and personal relationships.

*Id.* at 41; Trial Court Order, 1/22/21, at 1-2.[5]

Mother filed a timely Notice of Appeal, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues:

I. [Whether] the trial court erred as a matter of law in determining that it did not have subject matter jurisdiction pursuant to 23 Pa.C.S.[A.] § 5422[?]

II [Whether] the trial court erred as a matter of law in failing to analyze whether the trial court would otherwise have subject matter jurisdiction under 23 Pa.C.S.[A.] § 5421[?]

III. [Whether] the trial court committed an abuse of discretion in immediately relinquishing jurisdiction without communicating with the receiving court to determine whether its willness [*sic*] to accept jurisdiction upon consideration of 23 Pa.C.S.[A.] § 5428/VA Code [] § 20-146.19[?]

IV. [Whether] the trial court erred as a matter of law by determining that it could decline to exercise subject matter jurisdiction pursuant to [23] Pa.C.S.[A.] § 5427 without first finding that the trial court had subject matter jurisdiction[?]

V. [Whether] the trial court erred in determining that Father successfully challenged subject matter jurisdiction without complete analysis[?]

Mother's Brief at 7.

---

[5] The Order was memorialized in writing and entered on the docket on January 22, 2021.

In each of her issues, which we will address together, Mother challenges whether the trial court erred as a matter of law in determining that it lacked subject matter jurisdiction pursuant to 23 Pa.C.S.A. §§ 5421, 5422, 5427, and 5428. First, Mother argues that the trial court erred in determining that it lacked subject matter jurisdiction pursuant to section 5422 of the UCCJEA. Brief for Appellant at 19. Mother claims that the trial court improperly ignored the impact of Father's contemptuous behavior on her inability to parent Child. *Id.* at 20-22. According to Mother, she completed the requirements to receive unsupervised visits with Child, but Father failed to respond to her or "discuss expansion of custody." *Id.* at 23. Mother asserts that the trial court did not address whether "substantial evidence" exists in Pennsylvania. *Id.* at 24.

Mother next argues that the trial court erred in failing to analyze whether it would otherwise have subject matter jurisdiction under section 5421. *Id.* at 25. Mother acknowledges that Pennsylvania does not qualify as Child's "home state" within the 6 months preceding this action. *Id.* at 25-26. Further, Mother asserts that the trial court did not inquire as to whether the court in Virginia would accept jurisdiction. *Id.* at 26.

In her third issue, Mother contends that the trial court abused its discretion by relinquishing jurisdiction without first determining the receiving court's willingness to accept jurisdiction, in accordance with section 5428. *Id.* at 28; *see also id.* at 29 (wherein Father argues that "the [t]rial [c]ourt has potentially set this matter up to be stuck in legal limbo between Virginia and

Pennsylvania."). Mother also argues that the trial court incorrectly applied the test set forth under section 5421. *Id.* at 31.[6]

In her fourth claim, Mother, citing section 5427, asserts that the trial court erred in determining that it could decline to exercise subject matter jurisdiction, without first finding that it had subject matter jurisdiction. *Id.*

Finally, Mother generally challenges the trial court's decision, arguing that the court failed to conduct a complete analysis. *Id.* at 32. According to Mother, Father "has resumed his past behavior of drinking to excess in the presence of the [C]hild." *Id.* Mother claims that the trial court should have considered exercising emergency jurisdiction under section 5424. *Id.* at 35.

Mother's claims challenge the trial court's transfer of jurisdiction to Virginia. Mother's claims present a question of law, for which our standard of review is *de novo*, and our scope of review is plenary. *J.S. v. R.S.S.*, 231 A.3d 942, 947 (Pa. Super. 2000); *see also S.K.C. v. J.L.C.*, 94 A.3d 402,

---

[6] Mother failed to raise a claim related to emergency jurisdiction under section 5424 in her Concise Statement, nor does she direct us to any place in the record where she raised this claim with the trial court. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement … are waived."); Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Further, though Mother quotes section 5424(b) and baldly asserts that Father has an alcohol problem, this claim is not fully developed. *See* Pa.R.A.P. 2119(a) (providing that the argument shall include "such discussion and citation of authorities as are deemed pertinent."); *see also Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) (stating that "arguments which are not appropriately developed are waived."). For these reasons, Mother's final claim is waived.

408 (Pa. Super. 2014) (stating that, while an appeal from and order to exercise or decline jurisdiction would be subject to an abuse of discretion standard, a challenge to a court's determination that it possesses subject matter jurisdiction under section 5422 is a question of law, and subject to *de novo* review).

"[T]he UCCJEA governs questions of child custody jurisdiction arising between Pennsylvania and the other states of the United States." ***J.S.***, 231 A.3d at 947. Regarding an initial custody determination, section 5421 provides as follows:

**§ 5421. Initial Child Custody Jurisdiction**

**(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state[7] of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

---

[7] Section 5402 of the UCCJEA defines "[h]ome state," in relevant part, as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." 23 Pa.C.S.A. § 5402.

> (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and
>
> (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;
>
> (3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or
>
> (4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).
>
> **(b) Exclusive jurisdictional basis.--**Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.
>
> **(c) Physical presence and personal jurisdiction unnecessary.--**Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

23 Pa.C.S.A. § 5421 (emphasis in original).

As the trial court noted in its Opinion, section 5421 concerns a court's jurisdiction to make an *initial* custody determination. Trial Court Opinion, 3/11/21, at 8. The record reflects that Pennsylvania was Child's home state when these proceedings were commenced in 2014, and at the time the trial court entered the Final Custody Order in 2016. *See J.S.*, 231 A.3d at 948 (stating that Pennsylvania had jurisdiction to make an initial custody determination in 2015, where Pennsylvania was child's home state at that

- 8 -

time, and father and child did not relocate until 2016); **S.K.C.**, 94 A.3d at 410 (concluding that Pennsylvania trial court had jurisdiction to make an initial custody determination where the child was a Pennsylvania residence on the date the proceeding commenced).

Accordingly, we proceed to the question of whether Pennsylvania retained "exclusive, continuing jurisdiction" after Father and Child had relocated to Virginia in 2017. **See J.S.**, 231 A.3d at 948 (stating that "[i]f a Pennsylvania trial court with jurisdiction enters an order awarding custody, this state will retain 'exclusive, continuing jurisdiction' unless or until certain conditions occur."). Section 5422 provides for jurisdiction after a court has already made an initial custody determination. Section 5422 provides as follows:

**§ 5422. Exclusive, continuing jurisdiction**

**(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

(1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any

person acting as a parent do not presently reside in this Commonwealth.

**(b) Modification where court does not have exclusive, continuing jurisdiction.--**A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.

23 Pa.C.S.A. § 5422.

This Court clarified the requirements of Section 5422(a)(1) in ***Rennie v. Rosenthol***, 995 A.2d 1217, 1220 (Pa. Super. 2010) …. In ***Rennie***, we observed that 5422(a)(1) contains two prongs, a "significant connection" prong and a "substantial evidence" prong, both of which must be satisfied in order for Pennsylvania to lose exclusive, continuing jurisdiction. ***Id.*** at 1211. Regarding the "significant connection" prong, this Court explained that Pennsylvania will retain exclusive, continuing jurisdiction "as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth." ***Id.*** (footnote omitted). We went on to reject the appellant's contention in that case that Pennsylvania lost jurisdiction because [the mother] had relocated with the parties' child to Minnesota. ***Id.*** at 1222. Observing that the appellee continued to reside in Pennsylvania and exercised custody of the child here, we reasoned that a significant connection "will be found where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." ***Id.*** We reasoned, "[a]s indicated in clear language in the statute, **a 'significant connection' will be found where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child.**" ***Id.***

***J.S.***, 231 A.3d at 948-49 (emphasis added).

Regarding its decision under section 5422, the trial court explained as

follows:

Preliminarily, given that Mother's visits are fully supervised since the 2016 Order was implemented, it should be noted that she has not operated in a parental role prior to 2016.

- 10 -

[The following exchange is questioning of Father by his counsel on direct examination at the hearing on January 21, 2021.]

Q. [Father's counsel:] Okay.  So[,] from your knowledge, there is no one in Pennsylvania or in York County for that matter that can provide any insight into her current care or protection, or her relationships, is that correct?

A. [Father:] No.

Q. So[,] you operate under a Custody Order out of York County from 2016.  Does that Custody [O]rder provide you with sole legal and primary physical custody?

A. Yes.

Q. And what does it provide Mother?

A. Supervised visitation at this point.

Q. Has the [C]hild ever been to Mother's home?

A. No.

Q. Are you aware of any instance since 2016 where Mother has parented the [C]hild in York County, or Pennsylvania for that matter?

A. No.

*Trans.*, Jan. 21, 2021 at 6-7.

[The following exchange is questioning of Father by Mother's counsel on re-cross-examination at the hearing on January 21, 2021.]

Q. [Mother's counsel:] Okay.  But your testimony today about whether or not [Mother] offered any discipline, any parenting advice, or any type of counsel to [Child], you can't testify as to whether or not you know that?

- 11 -

A. [Father:] I can say that I would know that. I mean, [Child] would be very upfront about that.

Q. But you have not personally observed by hearing a consecration [*sic*]?

A. I hear conversations when they Facetime. I mean, it is out there[;] you can hear it.

*Id.* at [2]3.

Further, no visitation with Mother has taken place in Pennsylvania since 2016. *Id.* at 7. Rather, Mother's supervised visits take place in Virginia and [Child] receives all of Mother's calls and texts in Virginia. *Id.* at 7, 16-17. Moreover, testimony established that [Child] has not been in Pennsylvania since 2017 and she does not participate in any activities in Pennsylvania. *Id.* at 4, 6. Instead, she is deeply involved in her community in Virginia.

[The following exchange is questioning of Father by his counsel on direct examination at the hearing on January 21, 2021.]

Q. [Father's counsel:] Describe [Child]'s involvement in Bouttoit [*sic*] County[, Virginia]?

A.[Father:] She has been playing school soccer for the last three years. She is involved in the community churches. She does a lot of volunteer work in the community, in the food bank. She is in Future Athletes of America through the school. She does a lot of volunteering through the soccer team in the community. She has tons of amazing friends in the community.

*Id.* [at 6.]

[Child]'s relationship connections with Pennsylvania are also limited. Specifically, [Child]'s contact with her maternal grandmother is limited in that she does not speak with her regularly and the last contact was over six months ago. *Id.* at 13. … Additionally, [Child] has some cousins but their current location as to whether they reside in Pennsylvania or elsewhere appears to be unknown. Father testified that "they have bounced around

- 12 -

multiple places" and "once in a blue moon [Child] will hear something from them." *Id.* at 14.

Mother's main proffered evidence included her efforts to obtain a Threat of Harm Evaluation as well as phone calls from Pennsylvania to Virginia and vice versa as significant contacts. *Id.* at 29-33. However, this [c]ourt did not find that Mother's own efforts to get a Threat of Harm Evaluation supported a connection that linked the [C]hild to Pennsylvania. Even if these were contacts, given the overwhelming significance of [Child]'s contacts to Virginia, the length of time the [C]hild has resided outside of Pennsylvania, and the lack of this [c]ourt's involvement over such [a] long period of time, these connections are certainly insignificant. Therefore, this [c]ourt did not err or abuse its discretion.

Trial Court Opinion, 3/11/21, at 11-14.

Upon review, we agree with the trial court's determination. The record confirms that Child has lived in Virginia with Father since 2017. Additionally, the Final Custody Order granted Mother only *supervised* custody, and all of Mother's supervised visits have taken place in Virginia. Thus, the record reflects that, while Mother resides in Pennsylvania, she does not exercise parenting time in this state. Mother claim under section 5422 therefore lacks merit.

We now turn to Mother's jurisdictional challenges under section 5427 and 5478, which provide, in relevant part, as follows:

**§ 5427. Inconvenient forum**

**(a) General rule.--**A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised

- 13 -

upon motion of a party, the court's own motion or request of another court.

**(b) Factors.--**Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this Commonwealth;

(3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S.A. § 5427(a), (b).

## § 5428. Jurisdiction declined by reason of conduct

**(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction) or by other laws of this Commonwealth, if a court of this Commonwealth has jurisdiction under this chapter because a person seeking to invoke

its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:

(1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;

(2) a court of the state otherwise having jurisdiction under section 5421 (relating to initial child custody jurisdiction) through 5423 (relating to jurisdiction to modify determination) determines that this Commonwealth is a more appropriate forum under section 5427 (relating to inconvenient forum); or

(3) no court of any other state would have jurisdiction under the criteria specified in sections 5421 through 5422.

23 Pa.C.S.A. § 5428(a).

In its Opinion, the trial court addressed and rejected Mother's claim that it should have applied section 5428 before section 5427. The trial court explained as follows:

In this case, section 5428 is inapplicable. The statute refers to a [c]ourt in Pennsylvania, assuming jurisdiction for reasons of a party seeking for a Pennsylvania court to assume jurisdiction due to a party's unjustifiable conduct. 23 P[a].C.S.A. § 5428(a). Preliminarily, this [c]ourt was not convinced that there was unjustifiable conduct. Rather, Mother's claims regarding this matter seemed to be primarily dictated by [the] 2016 [Final Custody] Order. Given that Mother did not complete or claim to complete the [court's] requirements until 2020, this [c]ourt was not convinced that Mother could prove that [] Father's alleged conduct was the primary or even the sole reason that Virginia was the proper forum. **See** *Trans*. Jan. 21, 2021, at 35-36.

Furthermore, none of the exceptions which would permit this [c]ourt to assume jurisdiction are met. The first prong requires waiver by both parents. Father objected[,] so this is inapplicable. The second prong refers to another court's determination that Pennsylvania is [a] more appropriate forum. No court prior to this preceding [*sic*] has done so[;] thus[,] this is inapplicable. The third prong is inapplicable[,] as neither court

- 15 -

has jurisdiction under either of these sections[,] and Virginia would have jurisdiction under section 5427 as analyzed below. Accordingly, this [c]ourt did not err or abuse [its] discretion by not applying section 5428 before section 5427 because it is not applicable to the facts of this case.

Trial Court Opinion, 3/11/21, at 10-11 (emphasis in original).

Further, regarding section 5427, the trial court detailed its conclusions as follows:

This [c]ourt would also opine that it had the authority to decline jurisdiction under 23 Pa.C.S.A. § 5427.

….

Here, factor one was not at issue because neither party presented evidence relative to domestic violence. Factor two clearly favored Virginia as [the] convenient forum because[,] as explained above, the [C]hild has not been in Pennsylvania for over three years. Factor three favors Virginia in that Father and the [C]hild[,] as well as all of his witnesses including Mother's supervisor[,] would have to travel five hours from Virginia. *Trans*. Jan. 21, 2021. Relative to factor four, the [c]ourt did hear testimony regarding the hardship and costs of Mother and Father to litigate in the different states. However, both parties admitted that they could [have] participated by [Z]oom or some other electronic means to eliminate this difficulty. ***Id.*** at 25, 37. Accordingly, the [c]ourt found that Father would have more pertinent witnesses[,] including the [C]hild[,] in Virginia than Mother would have in Pennsylvania[,] and[,] presumably some of Mother's witnesses, *i.e.*, the supervisor, are actually located in Virginia. ***Id.*** at 21, 24.

Factor five was not relevant[,] as both parties desire different states to assume jurisdiction. As analyzed under factor four, Father presented quite a bit of evidence of persons that would need to be involved in the litigation[,] who are currently residing in Virginia[,] relative to factor six. Both parties agreed that another court could review this [c]ourt's [O]rder and make an expedient and informed decision, therefore eliminating the relevance of factor seven. ***Id.*** at 22, 34-35. This [c]ourt also believed that factor eight was not relevant. Namely, the assigned

- 16 -

judge has not heard the facts of this case in over four years and even declined to hear the [case] because the case was no longer familiar to him. Accordingly, it was evident that both a Pennsylvania [c]ourt and a Virginia [c]ourt are unequally [*sic*] unfamiliar with this case. As many of the factors are neutral and the remaining factors indicate that this Commonwealth is an inconvenient forum, this [c]ourt did not err or abuse its discretion.

Trial Court Opinion, 3/11/21, at 14-16 (emphasis in original).

We agree with the trial court's analysis, as stated above, and conclude that Mother's claims regarding sections 5427 and 5428 lack merit.

For the foregoing reasons, under our *de novo* review, we agree with and adopt the trial court's analysis and conclusions with regard to sections 5421, 5422, 5427, and 5428. Accordingly, we affirm the trial court Order relinquishing jurisdiction in this custody matter to the Commonwealth of Virginia.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/08/2021